

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3631 | **DATE** | 8/9/2002 |
| **CASE TITLE** | Staszak vs. Kimberly-Clark Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Kimberly-Clark's motion (Doc 15-1) for summary judgment is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

DOCKETED
AUG 1 2 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT STASZAK, )
 )
      Plaintiff, )
 )
vs. ) 01 C 3631
 )
KIMBERLY-CLARK CORPORATION, )
 )
 )
      Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Kimberly-Clark Corporation for summary judgment of all claims of Plaintiff Robert Staszak ("Staszak"). For the reasons set forth below, the motion is granted.

## BACKGROUND

Staszak worked for Kimberly-Clark in various sales positions for 26 years. He also has suffered from coronary artery disease since at least 1985, undergoing cardiac surgery and other treatment after a major heart attack.

Staszak's employment woes began in 1995, when he was demoted from the position of District Manager, which he had held for 14 years, to a non-supervisory position that eventually held the title of Market Manager. In his new position, Staszak reported to Don Scuvotti, who replaced him as District Manager. Beginning in 1996, Staszak's performance evaluations reflected Kimberly-Clark's dissatisfaction with his achievements in the area of end-user sales. The assessments

worsened in 1997, and in February 1998 Staszak was placed on a 90-day probation, during which he was to show measurable improvement in the noted deficient areas. The letter informing Staszak of the commencement of the probation period also alerted him to the possibility of dismissal from the company if he did not achieve the enumerated goals.

Approximately six weeks later, Staszak took a medical leave prompted by his doctors' orders that his stress at work was exacerbating his coronary artery disease. The doctors cautioned that Staszak could not work more than 40 hours per week. After eight weeks of cardiac rehabilitation, Staszak sought to return to work, subject to the restrictions his doctors advanced. At that time, Kimberly-Clark did not allow him to return to his previous position with the medical restriction, and Staszak instead began a six-month short-term disability leave that was then continued with nineteen months of long-term disability leave. During the period of his leave, Staszak received 70% of his former salary and continued to be covered under Kimberly-Clark's health plan.

Then, in April 2000, Russ Taylor, the president of Staszak's unit, terminated Staszak's employment. Although he continues to receive 70% of his salary, his insurance coverage ended. There had been no change in Staszak's doctors' position; he was still not to work over 40 hours per week. At the time his employment was terminated, Staszak was 52 years old.

After initially filing a claim with the EEOC, Staszak filed the instant suit, alleging breach of contract as well as violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Employment Retirement Income Security Act ("ERISA").

Kimberly-Clark now moves for summary judgment of all of Staszak's claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. Id. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is with these principles in mind that we address Kimberly-Clark's motion.

## DISCUSSION

Kimberly-Clark's first challenge to the propriety of Staszak's complaint revolves around its timeliness vis-à-vis the EEOC right-to-sue letter. To be timely, a discrimination complaint must be filed within 90 days of receiving the letter alerting the plaintiff of the right to sue in federal court. 42 U.S.C. § 2000e-5(f)(1). Unless the plaintiff fails to receive the letter through his or her own fault, the 90 days begins to run when the plaintiff receives actual notice of the right to sue. Bobbitt v.

Freeman Cos., 268 F.3d 535, 538 (7th Cir. 2001). Kimberly-Clark claims that they received their copy of the EEOC notice on January 22, 2001, so Staszak must have received it near to that time. Staszak claims that, through no fault of his own, he could not have received the letter before February 16, which would mean that the complaint was in fact filed in time. The parties have framed the issue in such a way that we cannot resolve it without resorting to an impermissible factual inquiry. For the purposes of this motion, then, we will assume, without deciding, that the complaint was filed within the appropriate time limit and move on to examine Kimberly-Clark's other positions.

Staszak levels three charges against Kimberly-Clark: unlawful retaliation, age discrimination, and disability discrimination.[1] To withstand summary judgment of these claims, Staszak must present either direct or indirect evidence of illegal motivations for the actions of his employer.

Staszak claims that he has direct evidence of age discrimination,[2] consisting of comments made by Kimberly-Clark employees expressing, among other things, a preference for "younger blood." It is well-settled that stray, isolated comments of this kind are insufficient to show discriminatory animus, particularly where, as here, they are not made by the persons making the employment decisions in question. Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1099 (7th Cir.

---

[1] In its motion, Kimberly-Clark included arguments regarding the viability of Count IV of Staszak's complaint. Staszak's response conceded the point and withdrew Count IV. Our discussion is therefore limited to the remaining three counts.

[2] We do not address the merits of Staszak's proffered direct evidence of retaliation, which consists of quoting the phrase "risk management purposes" out of the context in which it was spoken. Staszak's contention that these words refer to the reason why his employment was terminated, but the context in which they were spoken unequivocally indicates that they were said in regard to the involvement of Kimberly-Clark's corporation counsel in discussions regarding the termination decision.

2001); Cianci v. Pettibone Corp., 152 F.3d 723, 727 (7th Cir. 1998). Staszak attributes none of the comments he cites to Russ Taylor, Gavin Appleby, and Randy Watson, the parties he identifies as the decision makers. In addition, each of the comments was made at least 3 years before Staszak's termination. Consequently, Staszak cannot raise an inference of discrimination strong enough to defeat summary judgment with this evidence. Cullen v. Olin Corp., 195 F.3d 317, 323 (7th Cir. 1999).

To keep his claims alive, Staszak must show a triable issue through the much more prevalent method of presenting indirect evidence of discrimination using the McDonnell-Douglas burden-shifting analysis, in which Staszak must establish certain prima facie elements for each of his three causes of action. McDonnell-Douglas Corp. v. Green, 93 S. Ct. 1817, 1824 (1973).[3] If he is successful, Kimberly-Clark must provide a nondiscriminatory reason for the employment action. Id.; Peele, 288 F.3d at 326. The burden then shifts back to Staszak to show that Kimberly-Clark's reason is in fact a pretext to cover an unlawful basis for the actions the company took. McDonnell-Douglas, 93 S. Ct. at 1825; Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002).

Each claim of discrimination Staszak has put forth has a prima facie case slightly different from the others, but there are significant similarities. See Dvorak v. Mostardi Platt Associates, Inc., 289 F.3d 479, 483 (7th Cir. 2002) (ADA); Peele v. Country Mutual Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002) (ADEA); Stone v. Indianapolis Publ. Util. Div., 281 F.3d 640, 644 (7th Cir. 2002)

---

[3]The Seventh Circuit has cautioned that a district court may not examine the legitimacy of an employer's claimed reason for discharging an employee unless and until the employee establishes each and every one of the prima facie elements. See, e.g., Peele, 288 F.3d at 327; Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997).

(retaliation); Radue v. Kimberly-Clark, 219 F.3d 612, 619 (7th Cir. 2000) (ADEA). To make out each of his prima facie cases, Staszak must establish that he was performing his job functions satisfactorily at the time of the adverse employment action of which he complains, and he must show that similarly situated employees not within the applicable protected class (not engaging in statutorily protected activity, under 40, or not disabled) were afforded better treatment than he.

**The Employer's Legitimate Expectations**

The undisputed evidence shows that Staszak was not fulfilling his employer's expectations at the time Kimberly-Clark terminated his employment.[4] Staszak's evaluations as well as the probation letter evidence a continuing decline in his performance between 1996 and 1998. Def.'s Exhs. 1B, 2A, 2B. He was warned of the possible consequences of a failure to remedy the problems identified by his supervisor, and his own deposition testimony establishes that he had not brought his performance to the baseline level set out for the position in the probation letter. Def.'s Exh.1B, at 94, ll.7-10. The only evidence Staszak offers to support the inference that he was meeting Kimberly-Clark's expectations consists of comments from his coworkers. Such statements, standing alone, are insufficient to preclude entry of summary judgment in an employment discrimination case. Peele, 288 F.3d at 329.

The corresponding element of Staszak's ADA claim adds a unique twist: the employee must be able to fulfill the employer's legitimate expectations with or without reasonable accommodation of the disability. Once again, the undisputed evidence with regard to the second element establishes

---

[4]Staszak also claims that Kimberly-Clark acted unlawfully by not allowing him to return to work subject to the 40-hour per week restriction. This argument fails at the outset—Kimberly-Clark expected that a market manager would work more than 40 hours a week if necessary, so by definition, Staszak would be unable to fulfill Kimberly-Clark's expectations if he could only work subject to the medical restriction.

-6-

that Staszak could not perform his job with or without accommodation. The demands of his sales position included the ability to work beyond 40 hours per week if necessary, a requirement that his doctors concluded he did not have. Staszak gave Kimberly-Clark no indication that his condition would ever improve. Indeed, one of his beefs against his former employer is not that he eventually was able to work more than 40 hours per week but that he was not allowed to ignore his doctors' orders and work despite the restrictions. Staszak classifies this refusal as a failure to accommodate. Aside from the fact that we would not endorse such an irresponsible action by Kimberly-Clark, there is nothing in the ADA that requires a company to disregard uncontroverted medical opinions simply because an employee has decided to play the odds that the doctor is wrong. See Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 484-85 (7th Cir. 2002); Jay v. Intermet Wagner, Inc., 233 F.3d 1014, 1015 (7th Cir. 2000). In sum, then, Staszak has not shown that he was meeting his employer's legitimate expectations or even that he would be able to at some point. This deficiency is fatal to his discrimination claims.

**Similarly Situated Employees**

Because discrimination by its nature involves unequal treatment, a plaintiff must be able to provide a basis for a court to make a meaningful comparison of the employer's behavior toward protected individuals and individuals outside the statutorily identified classes. Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996). This is the source of the prima facie requirement of comparable employees outside the protected class. For an employee to serve as a worthwhile measuring stick, he or she must, at a minimum, deal with the same supervisor, be subject to the same standards, and engage in similar conduct without differing circumstances that would explain an employer's differing treatment. Radue, 219 F.3d at 617-18.

Staszak has not identified an employee with whom we can compare his situation to gauge whether Kimberly-Clark has engaged in illegal activity. The only employees under 40 he identifies who took medical leave, Mike Hartman and Ann Shannon, were not subject to medical restrictions of indefinite and potentially permanent duration, a differing circumstance that would provide an explanation of Kimberly-Clark's different treatment of those employees. The other evidence he presents does not touch on comparisons with similarly situated employees; instead it goes to the veracity of Kimberly-Clark's position that the duties of a Market Manager cannot consistently be performed in 40 hours or less per week. That argument is better suited for a discussion of pretext, not in identifying a reference point of more favorable treatment. Because he has provided no point of comparison from which we could infer improper favoritism, Staszak cannot make out this prima facie element for any of his claims.

**Pretext**

Even if Staszak had established a prima facie case on any of the three discrimination claims, his claims' chances of surviving summary judgment are extinguished by his inability to demonstrate that Kimberly-Clark did not honestly believe that Staszak's condition, as described by his doctors, indefinitely prevented him from putting in the hours that were required to properly perform his duties as a Market Manager.

Staszak's contention that Kimberly-Clark could not have believed it was terminating him based on the 40-hour restriction because they were free to disregard it is nothing short of foolish. See Covelli v. Nat'l Fuel Gas Dist. Corp., 2001 WL 1823584, at *7 (W.D.N.Y. Dec. 6, 2001); Marquardt v. Miles, Inc., 1994 WL 171698, at *4 (D. Kan. Apr. 14, 1994). The approach he advocates would trap employers between the Scylla of liability for following medical advice and the

Charybdis of different liability for ignoring the same. Cf. Koopman v. Water District No. 1, 972 F.2d 1160, 1163 (10th Cir. 1992) (finding no retaliatory discharge where employer relied on doctor's analysis of plaintiff's physical abilities); Phillips v. Swift & Co., 137 F. Supp. 2d 1126, (S.D. Iowa 2001) (finding genuine issue of fact whether employer acted wantonly in ignoring doctor's orders with regard to employee's physical abilities). Just as it is irresponsible and inappropriate for a court to second-guess an employer's personnel decisions without evidence of illegal activity, an employer has no place substituting its judgment of an employee's physical limits in the face of uncontroverted medical opinions. See, e.g., Wade v. Lerner New York, Inc., 243 F.3d 319, 325 (7th Cir. 2001).

Staszak's other arguments challenging Kimberly-Clark's reason for terminating him are equally unpersuasive. Throughout his deposition, Staszak was repeatedly asked if he had any evidence beyond his own beliefs regarding Kimberly-Clark's motivation. He had none beyond his own conclusion that there could be no reason other than discrimination behind his employer's decisions. Def.'s Exh. 1B, at 67-68, 125-26, 132.[5] In short, he is unable to present any evidence of pretext lurking behind the articulated reason for his dismissal: his undisputed inability to perform the duties of his position. Without some basis to conclude that Kimberly-Clark is being untruthful in its description of the rationale for its decision, Staszak cannot establish that a triable issue exists. Thus, under cases such as Stone, Dvorak, and Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 474 (7th Cir. 2002), Kimberly-Clark would be entitled to summary judgment even if Staszak had been able to raise the specter of illegal discrimination in the first instance.

---

[5]For similar reasons, Staszak's argument that Kimberly-Clark unlawfully interfered with his potential employment with A. W. Mendenhall, a Kimberly-Clark customer. Staszak offers no evidence that Kimberly-Clark somehow coerced Mendenhall into abandoning their negotiations with Staszak. Def.'s Exh. 1B, at 131-32.

## CONCLUSION

Based on the foregoing analysis, Kimberly-Clark's motion for summary judgment is granted in its entirety.

/s/ Charles P. Kocoras
Charles P. Kocoras
Chief Judge
United States District Court

Dated: August 9, 2002